AMERICAN INVESTMENT COMPANY v. WARDLOW.

Opinion delivered June 15, 1925.

MORTGAGE—PRIORITY OVER VENDORS' LIEN.—Where vendors, in consummation of a contract for the exchange of land, gave a warranty deed to enable a loan to be made thereon, and the mortgage company which subsequently made the loan knew that the vendors had conveyed for that purpose, and were not relying upon their vendors' lien, although it knew that the purchase money had not been paid, *held* that the vendors were estopped to claim that their lien was superior to that of the mortgage.

Appeal from Benton Chancery Court; *Sam Williams,* Chancellor; reversed.

*McGill & McGill,* for appellant.

*Floyd & Beasley,* for appellee.

SMITH. J. D. D. Wardlow, owned a 77-acre tract of land in Benton County, Arkansas, and in the spring

of 1922 he and his wife went to Hidalgo County, Texas, on an excursion train conducted by T. W. McNear, Jr., and a Mrs. Sands, who were the agents of the United Farms Company, a corporation engaged in selling real estate in Texas. The Wardlows were shown, upon their arrival in Texas, a farm of 22.61 acres, which they contracted to buy at the price of $450 per acre, which totaled $10,174.50. They executed a note for $7,700 and another for $474.50, both payable on demand, and agreed to pay the $2,000 balance of the purchase price by assuming the payment of vendor's lien notes for that amount, payable in five equal installments, against the Texas lands.

By the terms of the contract of sale the farms company agreed that, on or before May 1, 1922, or within a reasonable time thereafter, it would deliver to Wardlow a warranty deed of date February 8, 1922, to the 22.61 acres, with an abstract showing a good and merchantable title, the same to be passed upon by any reputable licensed attorney in the lower Rio Grande valley, and a reasonable time was to be allowed the farms company to meet and answer any requirements made by the examiner in regard to the title.

The contract of sale provided that the farms company should have the right at any time within fifteen days to inspect and reject the Benton County land in lieu of the $7,700 cash payment, and, if the land were rejected as the payment, the contract was to be treated as canceled and all papers relating to the deal were to be returned. If and when consummated, Wardlow was to be entitled to the landlord's share of the crop then growing on the Texas land, and the landlord's share of the crop on the Arkansas land was to go to the farms company.

McNear and Mrs. Sands returned with Wardlow and his wife to this State, and on February 11, 1922, they went to Wardlow's house to inspect the 77 acres. They took with them E. W. Ford, of Siloam Springs, to take the acknowledgment of Wardlow and his wife to a deed

for the 77 acres. Ford was a notary public and the agent for procuring loans of the American Investment Company, of Oklahoma City, Oklahoma.

The land was inspected and accepted by McNear, and he directed Wardlow and wife to execute and deliver to him a warranty deed, in which one J. B. Lamerre was named as grantee, and this deed recited a consideration of $3,000. Wardlow testified that the deed was made to Lamerre, instead of the farms company, for the reason that McNear explained that it was better to have the title in the name of an individual so that they could more easily procure a loan on the land and pay off the vendor's lien on the Texas land, which was stated to be $2,000. Wardlow further testified that McNear agreed that he would take the deed and the contract to Kansas City and have them approved by the farms company, and that not more than thirty days would be required for that purpose, after which the farms company would pay off the lien on the Texas land and send Wardlow a deed to the Texas land and an abstract of the title thereto. Upon the execution of the deed by Wardlow to Lamerre, McNear surrendered to Wardlow the $7,700 note.

Soon afterwards the farms company wrote Wardlow requesting payment of the note for $474.50, and on Feburary 27 Wardlow remitted to cover this note, which was returned to him marked paid on March 8.

In the meantime Wardlow went to Kansas City to see if he could get the farms company to rescind the contract of sale, but that company declined to do so. Wardlow then announced his willingness to proceed with the contract and asked that it be completed at once and advised the farms company that he could get the money to pay the $2,000 note, but was advised that the company was arranging to make a loan with the Benton County land as security to pay off the vendor's lien notes against the Texas property.

The testimony establishes the fact that the proceeds of the mortgage loan, application for which had been made in the name of Lamerre, was to be applied to the satisfaction of the outstanding vendor's lien on the Texas land, which was represented to be $2,000 but which proved to be something over $3,000 with the interest and costs of the foreclosure proceeding which was had in Texas to enforce that lien. This proceeding in Texas appears to have resulted from the delay in discharging that lien.

We think the testimony supports the appellees' contention that the mortgage company knew that the Wardlows had conveyed to Lamerre for the purpose of obtaining money to apply on the vendor's lien on the Texas land, and that the consideration of $3,000 recited in the deed from the Wardlows to Lamerre had not in fact been paid. For some reason, which is not made plain, Lamerre conveyed to Mrs. B. W. McNear, and the loan was finally made to her. This loan was for only $1,500, and it does not appear from what source the balance needed to discharge the lien on the Texas land was to be secured. We think it may also be said that, notwithstanding this conveyance from Lamerre to Mrs. McNear, the mortgage company remained charged with notice of the fact that the consideration recited in the deed from the Wardlows to Lamerre had not been paid.

It was, of course, impossible to close the original contract of sale after the Texas land was sold under the decree foreclosing the vendor's lien, and the Wardlows brought this suit to cancel this contract of sale and to have a vendor's lien declared in their favor for the $3,000 consideration recited in their deed to Lamerre, less a small amount of rent which the Wardlows had collected on the Texas land.

The relief prayed was granted, and the court decreed a lien in favor of the Wardlows for $3,000, and adjudged that this lien was superior to the mortgage lien for

$1,500 and directed a sale of the property in satisfaction thereof.

To affirm this decree, appellees invoke the rule, and cite cases supporting it, that a subsequent purchaser or incumbrancer who has knowledge of the fact that a portion of the purchase money due on a sale of land remains unpaid is not protected against the equitable lien of the vendor. Appellant concedes the correctness of this rule, but contends that it does not apply here for the reason that the testimony shows that the vendors were not relying on this lien as security for the consideration recited in the deed from them.

As we have said, we think the testimony is sufficient to charge the mortgage company with notice of the fact that the $3,000 had not been paid the Wardlows, but the testimony fails to establish the fact that the mortgage company had any notice that the proceeds of the mortgage loan should not be paid to the mortgagor to whom the loan was made.

Had the loan gone through as the parties contemplated, the Wardlows would have acquired the Texas property and their conveyance to Lamerre would have operated to completely divest them of the title to the Benton County land.

The testimony is very clear that the purpose of the deed to Lamerre was to enable him, or his vendee, to negotiate a loan on the Benton County land. To clear up the title to this land so that the loan could be made, it became necessary to meet certain objections which the examiner of the title made thereto, and Wardlow assisted in meeting these requirements.

We conclude, therefore, that the mortgage company, although it knew the $3,000 had not been paid, was warranted in believing that the Wardlows were not relying upon the equitable lien to secure its payment. Indeed, we think the Wardlows are estopped from asserting that their vendor's lien is superior to the mortgage lien after they had conveyed the apparent

title for the purpose of enabling their vendee to procure a loan, knowing, as we think the testimony shows, that the mortgage company was asked to make the loan upon the assumption that the mortgage lien would be the first lien. We think there is no testimony upon which to base a finding that the mortgage company would have made this loan except the assumption that the mortgage lien would be the first lien when the loan had been closed.

The loan which was made was made to the person who held the record title, and we think, under the circumstances, the mortgage lien is superior to the lien of the Wardlows, although the mortgage company had notice that the $3,000 had not been paid the Wardlows.

The testimony does not show that the Wardlows ever directed the mortgage company not to proceed with the loan.

We conclude, therefore, that the court below was in error in decreeing that the Wardlows' equitable vendor's lien was superior to the mortgage lien, and that decree is reversed and the cause will be remanded with directions to enter a decree adjudging the mortgage lien to be superior to the lien of the Wardlows.

Only the mortgage company has appealed from the decree of the court below, and we therefore consider only the question raised on its appeal—that of the priority of its mortgage lien.